Mr. McMichael. Good afternoon, Your Honors. May it please the Court, I represent Mark Doyle Construction Company. Mr. Doyle, after a bench trial, was awarded a judgment in the amount of $30,300, which represented an investment he made at the urging of Mr. Harris in a purported children's hospital in San Antonio that had been developed by Dr. Cooper, who was an acquaintance of Mr. Harris. Now, Mr. Harris and Mr. Doyle knew each other because Mark Doyle Construction Company, over the years, needed to have some construction bonds written, and Mr. Harris fulfilled that role. Now, Judge Hicks, after hearing the evidence, determined that that relationship between Mr. Harris and Mark Doyle was one of confidence as it related to Mr. Doyle's justification in believing Mr. Harris' assertions about the investments in Dr. Cooper's hospital project. The $30,300 was the first investment that Mark Doyle made. It was made in February. There was a second set of investments made in March of 2014. Mr. Doyle and some of his friends put up $103,000 plus bond premium. When Mr. Harris approached Mark Doyle about making these investments and offered him a tenfold return, Mr. Doyle declined. He said, I'm not going to take that risk. He was convinced to make the investment because Mr. Harris said, wait a minute, I've got a deal for you. I'll bond your investment so that there is no risk. And as Mr. Doyle commented to his wife and to the court, we can't lose. If Mr. Harris is going to bond our investments, this is a no-lose situation. And it was on that basis that the second round of investments were made. We believe that the trial court committed clear error when it determined that Mr. Doyle was not justified in his reliance on Mr. Harris' statements about the validity and purpose of the bonds for the second set of investments. So what we're asking the court to do is to increase the award for Mr. Doyle by the amount of the second investments and the second bond premiums so that instead of $30,300, his total award should be $146,000. Now the question becomes in that analysis is whether or not Mr. Doyle should have been put on notice by the first set of bonds and investments that Mr. Harris was not to be believed on the second set of investments. And in the span of the 30 days between the first and second investment, what Mr. Doyle learned was that at Mr. Harris' urging, he sent not only the money to be invested in the hospital to Dr. Cooper, but the bond premiums as well. And this was at the direction of Dr. Cooper and it was also at the direction of Mr. Harris. Judge Hicks found that Mr. Doyle's testimony in that regard was credible, that he believed that Mr. Doyle was being honest when he said Mr. Harris told me to send the bond premiums to Dr. Cooper. The bonds were issued. They were signed. They were sealed. There was nothing in the bonds that would indicate that they were not legitimate, valid in place. There was no watermark, nothing on the bond to indicate that it was merely a bond form. Now, Mr. Doyle did know that Mr. Harris had not received the bond premium directly. He and Mr. Harris discussed that. Mr. Harris says, don't worry about it. Dr. Cooper's good for it. So while he knew that Mr. Harris had not received the bond premium, he did not know the bonds were invalid or that Dr. Cooper was not going to remit the bond premium to Mr. Harris. By the time the second set of investments rolled around, the situation was exactly the same. Dr. Cooper, Mr. Harris instructed Mr. Doyle to send the money to Dr. Cooper directly. The bonds were issued. They were apparently valid, signed, and sealed, nothing to indicate that they were not valid bonds. But by the time Mr. Doyle realized he had not been paid, the reason given by Mr. Harris was, I never got the bond premium money. And, again, the key fact that led Mr. Doyle to invest was he believed that these bonds were valid, they were issued, and they would protect his investments in the hospital project. Right, but the district court determined that in the second round that where he'd already gotten, he knew that the original bond was not in place due to the nonpayment of the premium. He needed to do something else more and that a prudent investor, which Mr. Doyle apparently said himself, would do more. And that's exactly what Judge Hicks decided. And our position is that was clear error. Why? Because he did not, he, Mr. Doyle did not know that the bonds were not in place. What he did not know, he knew the premium money had not been remitted from Dr. Cooper back to Mr. Harris. Mr. Harris said, don't worry about it. We're good. She's good for it. But isn't that making it something fishy here? He had something weird going on about bonds and that alone, whether it's the premiums just not paid and he's brushing it off, that was enough for the district court to, I mean, we could find to the contrary, but it's clear error to say on this record that . . . I understand it's a high hurdle. It's a hard hurdle. So can you, what's your best case? My best case is nothing had changed between Mr. Harris and Mr. Doyle and Dr. Cooper. If it had, Mr. Doyle would not have made the second round of investments. Well, Mr. Cooper didn't, Cooper never paid Harris. Cooper never paid Harris. And that would cause a red flag. Why is Cooper not paying Harris? But he didn't . . . That itself is enough. I don't think Doyle realized that until after the second round of investments, that that money was not going to be remitted. Because remember, Mr. Harris kept saying, don't worry, don't worry about it, Mr. Doyle. Cooper's good for the money. Yeah, but that's the person that you're not supposed to believe anymore. So you can't say, well, because he gave me further insurances, then when you already know something's fishy, it can't just be his assurances are reason enough to rely. A reasonable, prudent investor would have done something differently instead of just relying on Harris at that point. There was the element of confidence. If Mr. Doyle had thought something was fishy, he wouldn't have made the second set of investments is my argument. His state of mind must have been the same because he acted in the same fashion. Is there a legal error in what the district judge did, or is it just his interpretation of the facts? I think he heard the witnesses. I think he made credibility calls. I can't. Where's the legal error? I can't ascribe any legal error. Isn't he basically saying, and you're disagreeing, that it was unreasonable for you to make that second investment? Correct. That is a matter of what did the facts show, what would a reasonable investor do, et cetera. So that's a fact finder. I think that's what I'm stuck with. Well, not stuck. Here you are. Keep going. Well, the argument that my opponent now makes for the first time, because it was not raised at trial, is that this claim had prescribed. My argument is that Rule 8 specifies that statute of limitations prescription is an affirmative defense. If you don't plead it, you waive it, unless you can perform a 12B6 analysis on the face of the pleadings, which in this case we can't because we don't know the important date, is what date did Mr. Doyle realize he had been duped? Because that starts the time running for the prescription for fraud. So that leaves plain error, which I don't think applies in this case. Plain error is designed, based on the cases cited by my opponent and the cases we cite, to correct errors of the court, not errors of the litigants. The two cases that he does cite that correctly applied plain error had to do with jury instructions. The court instructed incorrectly the jury and the appellate court said that was clear error and we can step in and make changes in order to avoid a miscarriage of justice. And I don't think that's the case here. The error was not the court's error. It was the client's error, the litigant's error, in failing to plead properly the affirmative defense. I'll reserve the rest of my time. Thank you. Good afternoon, Your Honors. Mark Pleasance on behalf of First Assurity and David Harris. Good Louisiana name. Excuse me? Good Louisiana name. Yes, Your Honor. I'm originally from way south of Louisiana, unfortunately in a hurricane area. I'll start where my opponent ended because he crafted a wonderful story of alleged fraud and obviously this court saw real quick, at least based on your questions, that the trial court parsed it into Sure, you. You're trying to get the trial court to get us to reverse the trial court too. Well, actually I'm getting, well, I'm even going further than that, Your Honor. Yes. I am asking the court to follow a little legal logic and dismiss this case in its entirety. You have the right to do that and here's how you do it. First of all, you have to agree with me on the initial premise because the rest takes care of itself. And there is authority to back up my initial premise. This court has authority signing a Tenth Circuit case. I understand I haven't found any in the Fifth, so it's rest no or first impression. This court has authority in rare instances to sua sponte raise a dispositive issue of law when the proper resolution is beyond doubt, and I'll explain why it's beyond doubt, and failure to address it would result in a miscarriage of justice, which is self-explanatory by the judgment in this case. I've cited cases in my brief from the Tenth Circuit. I could certainly do a 28-J letter. I've heard the court all day with additional cases, but they are from the Tenth Circuit. So I'll just say the Tenth Circuit is, but if you're interested, Your Honor, I'd be glad to do that so you can read them all. I found two or three more in the course of preparing for argument, but they're all from the Tenth Circuit. Okay? This seems to be an unfair surprise. I understand. Our authority in Ingraham and several other cases is an unfair surprise to wait until the appeal stage and say, oh, by the way, in a commercial case where it's not some kind of . . . and you sophisticated parties are waiting until the appeal to raise statute of limitations. Well, I understand. Okay. It wasn't raised at the trial court, and in reviewing the record, it became obvious to me that, at least under Louisiana, I was prescribed. And I think what really makes that point is this case was initially filed in Texas, and they were unable to serve or find Ms. Cooper, so consequently jurisdiction was lost. And then the issue became, where do we move it to? Louisiana or Georgia? My clients are domiciled in Georgia. The bonds indicate that any dispute over payment of the bonds or validity of the bonds must be litigated in Georgia. Texas and Georgia have four-year statute of limitations on fraud. The plaintiffs pushed hard for this case to be in Louisiana. The trial court, over the objection of my clients, ruled that it should be in Louisiana. Therefore, in the eerie, Louisiana law applies. One-year prescription. My colleague says prescription doesn't apply because, let's assume I'm correct, that this court agrees with me that you have the authority, which you do, to sua sponte rule on the merits of my prescription argument. Let's go down that path. My opponent has conceded in his brief and in his argument that Rule 8, on occasion, may be subsumed into a 12b-6. In February of this year, as I cited in my brief, Judge Costa wrote that in the bail case, that Rule 12b-6 dismissal may be appropriate based on a successive affirmative defense if the affirmative defense appears on the face of the complaint, and he cited Rule 12b-6 as being essentially self-defeating to claims, which he included in there the verbiage statute of limitations. So he agreed that Rule 8 can be subsumed into 12b-6. So let's assume for, well, we're not assuming, but for practicality's sake, now a district court can make that argument or can do that, sua sponte raise that issue. I'm saying this court can do the same thing. I'm saying if you look at, then if you look at the pleadings in this case, okay, the pleadings in this case that the complainant acknowledged in the complaint that they had knowledge as early as March of 2014, one month after the investment, that they learned Cooper would not pay on the investment. Their complaint says that in 2004, initial complaint in 2014, that the bonds paid for were never received, which under the Louisiana law would be suggestive of actual intent of a possible fraud claim, which would start the counting of the one year for prescription. In their amended complaint, Record on Appeal 388XX, five or six pages, they claimed they had the conversation February 6, 2014, with Harrison Cooper about the deal. They put a date, but shortly thereafter they called about the bonds and were told they were never in effect. They essentially claimed that on pages 392 and 393, I'm suggesting that they claimed fraud occurred because they said Harris made false statements of future promise in the bonds sent to them and knew at the time they were not real. If that is not a statement alleging fraud, then no statement would allege fraud under Louisiana law. The year started. If you want to be generous, and it's going beyond the pleading, but it's still documents in the record which are referred to in the initial complaint, they received in November of 2014 a letter from my client's attorneys saying, officially saying the bonds are not being paid because we never received the premium. The suit was not filed until 18 months later. That's prescribed on its face. On the merits, there's no doubt I'm correct. I strongly believe in my position. I think where this court needs to go is legally this court needs to follow my positive stretch, and not unreasonable, a reasonable inference and mental stretch of the law to find that you have the authority, because this is one of those rare cases, Judge Eldridge, that you have the authority to dismiss. I'm not saying you want to open the floodgates to all of these potential issues being brought to you on appeal, but you have to recognize the situations exist where someone may come to you and say, Judge, my reading of the record. I mean, if you want to go into, you know, plain review or plain error, we can go into that too. It's invoked in civil cases, just like criminal cases. I cited cases in my brief that say that. It could fit under that, but I would rather go in the very neat three-step or two-step approach. You adopt the theory of the Tenth Circuit, and then you apply it in this case. It says you have authority. Here's an opinion from February that says Rule 8 can be subsumed into Rule 12, which is no opposition to that. Actually, no opposition to my initial theory. They totally, with all due respect to my opponents, they kind of gloss over that point completely. It doesn't say it's a late call. I mean, it said it was brought up on appeal, but it cites nothing to say, oh, it's a late call and can't be done. We're elaborating a lot on the point. I think we got it. Okay. Thank you, Judge. Thank you, Judge. I appreciate your candor with the court that it would be a stretch. But it's not an unreasonable legal stretch. I didn't – that's – yes. And the law is not stagnant. Do you want to talk about your other argument? I do. Real quick. Any alternative you can reverse on the grounds of this is not fraud under Louisiana law. If you apply Louisiana law, it's not fraud. There's no doubt Mr. Harris issued the bonds or something purporting to be the bonds. The record indicates that he testified. He sent them these documents so that they would know what they looked like when they were formally issued upon payment. He also testified that there were discussions between him and the Doyles regarding the issuance of the bonds. And because of the way – they had an ongoing business relationship. Not before the court, but I learned speaking to my client, they still have an ongoing business relationship. Mr. Doyle knew how to secure bonds from Mr. Harris. Sent him a premium. He claims that they were told to send it to Ms. Cooper. You know, the problem is Ms. Cooper is nowhere to be found. But if you consider all that, let's delve into, in my last seven and a half minutes, and I'll try not to take them all because I really don't want to. Louisiana law and fraud. Harris was not a fiduciary for the Doyles. That eliminates a large amount of information that he is required to produce to them or tell them. He has no duty to divulge to the Doyles anything whatsoever. Reading the record, it seems what really got the Doyles riled up is when they received a copy of an e-mail that purported to show what agreement my clients supposedly made with Cooper on the side regarding the whole project. You know. And that I'd like to correct for the record, despite the plaintiff's insistence and the court's insistence, Mr. Harris testified under oath, may come to credibility, may not, that he never personally met with Ms. Cooper. They seem to hammer that in. Well, Harris met with Cooper, so they concocted the scheme, and he got the Doyles involved, so he could get this one point something million dollars or whatever. Okay. Well, the district court determined that it was his silence on the pecuniary arrangement, but put that to one side. His affixing his signature and seal to the draft binder bond and his repeated advisements that Cooper was good for it, that was the material misrepresentation. So are you saying that that was clear error? Yes. Why? Mr. Doyle knew, first of all, that Mr. Harris should have been paid for the bonds either directly, whether or not there was testimony that it should go to Ms. Cooper. I guess I'm asking if it's clear error. I'm asking did that not happen? I'm not asking whether that's legally sufficient for material misrepresentation. I think the evidence shows, correct, Your Honor, that there were discussions that the Doyles would pay Cooper $33,000, 30 investment, 3 grand for the bonds. She would send the 3 grand over to Harris to bond the investment. He sent them 5 or 1, whatever, initially 1. He sent them a document that purports to be a bond. I'm not disputing that. What I'm saying, though, you have to read it in context, is that his testimony was, yes, I sent him this document. It was a facsimile. It was a proffer of what the actual bond would be. They interpreted it to be the actual bond. But let's assume it was the actual bond. The language on the bond had a payment date. And even at that date, the Doyles never ensured that it was paid. That becomes critical. And if you want to take the judge's, I know Your Honor's made much of the court's second finding. The same applies to the first finding. There is no evidence in this case that the Doyles conducted any due diligence on this investment. Louisiana law article 1954 says that fraud does not vitiate, assuming there's fraud, fraud does not vitiate consent when the party has the ability to ascertain for themselves what is going on. I'm kind of paraphrasing, but that's what it indicates. Okay? And that due diligence is essentially pulling the plug of anyone who has a fraud claim when they fail to conduct their own investigation as to what's going on. Specifically, fraud does not vitiate consent when the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill. So there's many things the Doyles could have done. Number one, they could have investigated the initial investment with Ms. Cooper. It's amazing that when it came time for trial, there was an Internet search done and in 2017 they find an article that was dated in a newspaper March of 14, weeks after they made the investment, discussing the total fraud of Cooper in the San Antonio newspaper. It's in the record. It's in the record. But a simple Internet search? If somebody promised me a 10-to-1 return, I'm certainly going to look into that. It sounds too good to be true. It usually is. If you ask all the people that were losing their retirements and stuff from the Madoff incident, where they were promised 20-to-1. You know, right now if you can get one-to-one out of financial institutions on your investments, you're probably doing great. But the Doyles had a duty to investigate. The Doyles had a duty to do due diligence. Some due diligence. They admitted they did none. Even direct questioning about a trial judge. Mark Doyle said, no, we didn't do anything. We relied on Cooper. They had independent conversations with Cooper. Well, the way the district judge looked at this is they didn't need to because they would be bonded. This whole thing could be bogus, but they'd get their money back. Now, that's not unreasonable. If I guarantee you repayment, I've got this big major company behind me that's got Assurity as part of its name, and you'll get your $30,000 back. Now, that doesn't explain the second one, but it does explain the first one. No, the second one, that's completely. Oh, yeah. I agree. That one's completely gone. But the first one. But the first one. But when they learned from Mr. Harris that he never received the money, they never took any steps to inquire why. They never called Cooper. And so much so that they sent Cooper money to pay for her payroll. I mean, really, that in itself, to me, is lack of due diligence. But my first argument is really that it applies. Thank you. Thank you. Well, again, Mr. Harris refuses to pay the bonds because he said, I didn't get the premium. But it was at his direction that Mr. Doyle paid the premium to Dr. Cooper. And if Mr. Harris can issue the bonds, he can certainly direct where the payment for the premium of those bonds are going. So the first set of circumstances did not rise to the level of putting Mr. Doyle on notice to the point where he couldn't justifiably rely on the strength of Mr. Harris's bonds for the second set of investments. Now, with regard to this idea of plain error, what my opponent is asking you to do is to guess what Mr. Doyle's state of mind was with regard to when he first learned that he had been duped. Typically, when this is pled appropriately, the court invokes a hearing, an evidentiary hearing, at which evidence is taken on when important things happen. When did Mr. Doyle realize he had been the victim of fraud? He would have been asked that. Mr. Doyle, when did you realize? He could have been cross-examined. Other evidence could have been brought in, and the court could have made a finding of when that date occurred so that a prescription date, a statute of limitations date, could have been set. But what the appellee is asking you to do is disregard the fact that there was no hearing, there's no evidence, and to make a guess about when prescription began to run and dismiss this case without any evidentiary basis. And he agreed and I agree that the point of a plain error rule is to prevent a miscarriage of justice. And as I put in my brief, is it a miscarriage of justice for a person who has committed fraud to be liable to his victim, as is the case now with the way the judgment stands, or would it be a miscarriage of justice if Mr. Harris goes scot-free and does not have to pay for his fraud because of this idea without evidentiary support that the statute of limitations ran before the lawsuit was filed? I think the miscarriage of justice argument is in favor of holding Mr. Harris liable for his fraud. Thank you. Thank you. We have your arguments and this case is submitted and this completes the arguments for today. Thank you. Thank you. I'll rise.